IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2002

## STATE OF TENNESSEE v. JEFF L. COURTNEY, III

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 01-CR-011    James Edward Beckner, Judge**

---

**No. E2001-01258-CCA-R3-CD**
**August 20, 2002**

---

The Hamblen County Grand Jury indicted the Defendant, Jeff L. Courtney, III, for one count of driving under the influence, *per se* and for one count of driving under the influence, second offense. A Hamblen County jury convicted the Defendant of driving under the influence, second offense, and the trial court imposed a sentence of eleven months and twenty-nine days. The Defendant now appeals his conviction, arguing that the trial court improperly commented on the evidence at trial, that the trial court improperly instructed the jury, and that the evidence presented at trial was insufficient to support the Defendant's conviction. We conclude that the trial court did not improperly comment on the evidence, that the jury instructions were proper, and that sufficient evidence was presented at trial to support the Defendant's conviction. Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Paul G. Whetstone, Morristown, Tennessee, for the Appellant, Jeff L. Courtney, III.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Paige Collins, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

Morristown police officer Terry Sexton testified that just after midnight on November 26, 2000, he observed the Defendant driving a green minivan in the center lane of West Morris Boulevard. Officer Sexton watched the Defendant proceed through an intersection while driving in the center turning lane. Sexton then turned on his blue emergency lights, pulled behind the Defendant, and attempted to make a traffic stop. The Defendant never stopped for the officer, but

eventually parked his vehicle in a convenience store parking lot. There, Sexton pulled behind the Defendant and got out of his vehicle. As he was asking the Defendant to produce his driver's license, Sexton noticed that the Defendant emitted a strong smell of alcohol, that the Defendant's speech was slurred, and that the Defendant's eyes appeared to be crossed. Officer Sexton testified that the Defendant had trouble removing his license from his billfold. Sexton testified that he gave the Defendant a series of field sobriety tests, the first of which was the "leg stance," which the Defendant was unable to perform because he had a "bad leg." Sexton stated that he later learned that the Defendant is physically impaired. Sexton testified that the Defendant was unable to focus sufficiently to perform other sobriety tests. Sexton subsequently placed the Defendant under arrest and transported him to the Morristown Police Department.

Morristown police officer Heath Haney assisted with the arrest and testified that the Defendant appeared to be under the influence of an intoxicant. Haney accompanied the Defendant and Officer Sexton to the police department where the Defendant submitted to a breathalyzer test. Officer Sexton testified that he used the Intoximeter EC-IR, a machine certified by the Tennessee Bureau of Investigation (TBI) for testing blood alcohol ratios. According to Sexton, the TBI tests each Intoximeter every three months for accuracy. Sexton reported that the machine used in this case was tested and certified on September 25, 2000, two months prior to the Defendant's arrest. Officer Sexton testified that he was trained by the TBI to operate the Intoximeter and that he followed standard operating procedures for testing the Defendant. Both Officer Sexton and Officer Haney observed the Defendant for the requisite twenty minutes prior to the exam. During this time, the Defendant did not consume any alcohol, smoke, or vomit; nor did he put anything into his mouth. After the observation period, Officer Sexton entered the Defendant's driver's license number and date of birth into the machine. He purged the Intoximeter to ensure that there were no impurities in the system, and after the Intoximeter indicated that it was clear, he instructed the Defendant to blow into the machine. The Defendant's blood alcohol level registered at .24 percent. The printout record from the Intoximeter showing the results of the Defendant's test was offered into evidence.

Defense counsel questioned both officers regarding their knowledge of the Intoximeter. Both officers testified that they had received proper training by the TBI to use the Intoximeter, but neither could explain the internal workings of the machine. During Officer Sexton's testimony, the trial court indicated that the officers were not required to know precisely how the machine operated internally:

> [Defense Counsel]: Did you know that this machine measures blood alcohol, or did you think it measured breath alcohol, because I personally thought it was ---
> [Prosecutor]: Objection, your Honor.
> [Defense Counsel]: -- breath alcohol.
> [Prosecutor]: It's irrelevant.
> The Court: Sustained. It measures alcohol in the breath but it translates it into percentage of alcohol in the blood.
> [Defense Counsel]: And do you know how that works?
> [Prosecutor]: Your Honor, objection again.
> The Court: Sustained.

[Prosecutor]: He's not required to know that.

Defense counsel subsequently questioned Officer Haney about the mechanics of the Intoximeter EC-IR:

[Defense Counsel]: Okay. And this machine sort of polices itself to make sure that it's not going to get or produce an unreasonable results or a wrong number based upon other and many thousands of chemicals that come across this photoelectric cell. Is that right?

[Officer Haney]: Right

[Prosecutor]: Your Honor, at this point I object.

The Court: Sustained.

[Defense Counsel]: And you have to have faith that the machine is going to work, don't you?

[Officer Haney]: Yes. It's been my experience that it's right according to whatever I think the condition of the driver is, the machine's right.

[Defense Counsel]: Okay. So you think the machine is right? You [sic] saying always right?

[Officer Haney]: I've been a little off before, but generally it's pretty much on the money.

[Defense Counsel]: You have not heard of any of the reports of the result being skewed as a result of other chemicals in the breath?

After objection by the prosecution, the court asked the jury to disregard Officer Haney's testimony regarding the internal workings of the Intoximeter:

[W]e're just in an area where it take[s] a scientist or a medical expert to testify about it . . . . They don't have to have an expert. The machine has been – I'm not validating the machine or speaking for its veracity, but it's accepted generally scientifically. That's the reason he can testify.

The defense then presented several witnesses who testified that they were playing cards with the Defendant until just before his arrest. The Defendant testified that he brought a case of beer to the card game but consumed only one can of beer. He stated that he gave two other cans to friends but could not remember to whom. When Officer Sexton pulled the Defendant over, three cans were missing from a case of beer found in the Defendant's possession. Witnesses from the card game testified that they had seen the Defendant consume only one beer that night. One witness, a former deputy with the Hamblen County Sheriff's Department, testified that he had been trained to recognize if someone was under the influence of an intoxicant and stated that the Defendant "seemed fine" when he left the card game.

The Defendant and his son both testified that the Defendant suffers from multiple medical conditions which affect his ability to move and walk. As a result, the Defendant must take ten prescription pills per day. The Defendant and his son testified the Defendant has trouble using his hands and that although he is right-handed, the Defendant keeps his wallet on his left side because he is better able to use his left hand. The Defendant testified that he used his left hand to produce his driver's license for Officer Sexton. During testimony, the Defendant explained that his

-3-

additional physical limitations prohibited him from performing the field sobriety tests. Because of this, he felt it was in his best interest to submit to the Intoximeter. The Defendant denied that he was under the influence of alcohol and could not explain why he registered .24 on the Intoximeter.

At the conclusion of the trial, the court issued the following instructions to the jury:
For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
One, that the defendant was driving an automobile or motor-driven vehicle;
And, two, that this act occurred on a public road or highway;
And, three, that the alcohol concentration in the defendant's blood or breath was ten hundredths of one percent, point one zero or more.
Further, the court asked the jury not to concern itself with rulings on the admissibility of evidence, stating that its rulings were not indicative of the court's opinion as to the facts of the case or what the verdict should be.

## II. Analysis

The Defendant now appeals his conviction, arguing that the trial court improperly commented on the evidence at trial, that the trial court improperly instructed the jury, and that the evidence presented at trial was insufficient to support the Defendant's conviction.

### A. Comments on the Evidence

First, the Defendant argues that the trial court committed reversible error and effectively denied him his due process right to a fair trial by making statements related to the validity of the Intoximeter. It is an established rule that a trial judge must not express any thought which would lead a juror to infer that his opinion was in favor of or against a defendant. State v. Harris, 839 S.W.2d 54,66 (Tenn. 1992). However, the court may use its discretion in conducting a trial, including ruling on the admissibility of evidence and the propriety of examination and argument. Id.

In this case, the trial court's statements did not bear on the Defendant's guilt or innocence. Furthermore, they were correct statements of the law. The Tennessee Supreme Court has recognized the reliability of properly-performed breath tests and has relaxed the prerequisites to establish scientific reliability of the equipment. See State v. Sensing, 843 S.W.2d 412, 416 (Tenn. 1992). In Sensing, the court concluded that "it is no longer necessary for a certified operator of an evidentiary breath testing instrument to know the scientific technology involved in the function of the machine." Id. This Court has stated that where the Sensing requirements are met, the Intoximeter EC-IR is scientifically sound, and expert testimony is not required for its admission. State v. Korsakov, 34 S.W.3d 534, 540 (Tenn. Crim. App. 2000).[1] Here, the trial court did not improperly comment on

---

[1] In Korsakov, this Court noted that the Sensing case involved the use of an Intoximeter 3000. Korsakov, 34 S.W.3d at 540. However, this Court concluded that "the foundational prerequisites established in Sensing for test results
(continued...)

the evidence or facts of the case, but merely declared the law.  Therefore, this argument is without merit.

## B. Jury Instructions

Next, the Defendant argues that the trial court erred by failing to instruct the jury regarding "permissible inferences" in accordance with Tennessee Pattern Instructions § 38.05.  The Tennessee Supreme Court has stated that "[q]uestions concerning the instructions are generally deemed to be waived in the absence of objection or special request, unless they contain plain error."  State v. Cravens, 764 S.W.2d 754, 757 (Tenn. 1989).  Because the Defendant failed to request the special instruction and failed to object to its omission, and because we find that the trial court did not commit plain error in instructing the jury, the Defendant has waived the issue on appeal.

Even so, the Defendant's argument is without merit.  The pattern instructions proposed by the Defendant provide:

> You have heard from the proof that at the time of the defendant's arrest, *[he]* . . . consented to and was given a test for the purpose of determining the alcohol content of the defendant's blood.
>
> Evidence from the test that there was, at the time alleged, *[ten hundredths of one percent (.10)]* . . . or more by weight of alcohol in the defendant's blood, creates an inference that the defendant was under the influence of such intoxicant, and that the defendant's ability to drive was impaired.
>
> . . . .
>
> However, you are never required to make this inference.  It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits you the jury to draw from any blood test result.  Also, the inference may be rebutted by other evidence and circumstances.
>
> It is for the jury to determine, after a consideration of all the evidence, whether to make the inference which the law permits, the correctness of such inference, and what weight is to be given to such evidence.

T.P.I. - Crim. § 38.05 (footnotes omitted).

As the State correctly points out, these instructions do not properly state the law for DUI, *per se*.  Tennessee Code Annotated § 55-10-401(a)(2) states, "It is unlawful for any person to drive . . . while . . . [t]he alcohol concentration in such person's blood or breath is ten hundredths of one

[1](...continued)
from an Intoximeter 3000 also apply to the Intoximeter EC-IR." Id.

percent (.10%) or more." Thus, as the State points out in its brief, having an "alcohol concentration . . . ten-hundredths of one persecnt (.10%) or more" is an element of the offense rather than the basis of a reasonable inference. Consequently, a special instruction on permissible inferences was not appropriate in this case. This issue is without merit.

## C. Sufficiency of the Evidence

Finally, the Defendant contends that the evidence presented was insufficient to warrant his conviction. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

Here, the Defendant argues that the State failed to lay the necessary foundation for admission of the breathalyzer results and that without these results, the evidence is insufficient to sustain a guilty verdict. In State v. Sensing, 843 S.W.2d 412 (Tenn. 1992), the Tennessee Supreme Court established foundational prerequisites for the introduction of breath test results. Id. at 416. The court stated that prior to admitting breath test results,

> the testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the

prescribed operational procedure, (6) identify the printout record offered in evidence as the result of the test given to the person tested.

Id.

The transcript establishes that the six threshold prerequisites for introduction of the breath test results were met in this case. Officer Sexton testified that the tests were performed in accordance with the standards and operating procedures promulgated by the forensic services division of the TBI, and he stated that he was properly certified in accordance with those standards. He claimed that the instrument used was certified by the forensic services division, that it was tested regularly for accuracy, and that it was working properly when the breath test was performed. Both he and Officer Haney testified that the Defendant was observed for the requisite twenty minutes prior to the test; they reported that during this time, the Defendant did not have foreign matter in his mouth and that he did not consume any alcohol, smoke, or regurgitate. Officer Sexton testified that he followed proscribed operational procedure, and he identified the printout record offered into evidence as the result of the test given to the Defendant. Therefore, the Intoximeter results were properly admitted in accordance with the Sensing requirements.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

-7-