# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 17, 2009 Session

## STATE OF TENNESSEE v. CHAD NICHOLAS HALE

**Direct Appeal from the Circuit Court for Dickson County**
**No. 22CC-2008-CR-536    Allen Wallace, Senior Judge**

---

**No. M2009-00696-CCA-R3-CD - Filed November 2, 2010**

---

Defendant, Chad Nicholas Hale, was convicted of driving under the influence (DUI) per se, a Class A misdemeanor. He was sentenced to eleven months, twenty-nine days to serve 10 days by incarceration and the balance suspended and served on probation. On appeal, Defendant contends that the trial court erred by failing to suppress the results of his breath alcohol content test. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Timothy V. Potter and Lindsay C. Barrett, Dickson, Tennessee, (on appeal); and Mitchell B. Dugan, Dickson, Tennessee, (at trial), for the appellant, Chad Nicholas Hale.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Kelly Jackson, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

## I. Background

*Trial*

On the evening of May 13, 2008, Deputy Randy Bruso of the Dickson County Sheriff's Department observed a 2006 Chevrolet Colorado, driven by Defendant, fail to stop

at a stop sign on Highway 48 North traveling toward Charlotte, Tennessee. Deputy Bruso did not immediately activate his blue lights because there was no safe place to pull over; however, he turned on the video equipment. Deputy Bruso followed Defendant, whose driving was "[e]rratic," and he observed Defendant's vehicle cross the center line several times into the oncoming lanes of traffic. He determined that Defendant was driving around seventy miles per hour by pacing him, but he did not issue Defendant a speeding ticket because he could not be sure of his speed. The posted speed limit is fifty-five miles per hour. Once he and Defendant entered the Charlotte city limits, Deputy Bruso activated his blue lights in an area where he could safely stop Defendant. After passing several parking lots, Defendant finally pulled into the parking lot of the Murphy's Cee Bee store.

When Deputy Bruso approached Defendant's vehicle, he immediately smelled an odor of alcohol coming from the truck. Defendant told him that he had "drank six beers and had one shot." Deputy Bruso testified that Defendant also said that "[h]e had drank way too much to be driving. . ." He then asked Defendant to perform several field sobriety tests. Deputy Bruso testified that Defendant performed poorly on the heel to toe test because he was "slightly unsteady on his feet, and he missed touching his heel to his toe numerous times." Defendant also performed poorly on the one-leg stand by touching his foot to the ground on counts seven and sixteen. Deputy Bruso testified that he also asked Defendant to recite the alphabet beginning with the letter E. He said that Defendant softly recited the letters A through D, "then he began reciting E and went all the way up to Z." At the conclusion of the alphabet test, Deputy Bruso placed Defendant under arrest and transported him to the Dickson Police Department. Defendant signed an implied consent form and submitted to a breath alcohol test, which indicated that his blood alcohol level was 0.16 percent.

*Supression Hearing*

At the suppression hearing, Deputy Bruso testified that after he arrested Defendant for DUI, he read the implied consent form to Defendant, and Defendant submitted to a breath alcohol test. Deputy Bruso testified that he administered the test in accordance with standards of the Tennessee Bureau of Investigation (TBI), and he was also certified in accordance with those standards. He also said that the instrument was regularly tested and certified. Deputy Bruso testified that he observed Defendant for twenty minutes prior to administering the test, and he did not have any foreign matters in his mouth, and he did not smoke, regurgitate, or drink any alcoholic beverage. He then followed the instrument's prescribed operation procedures and conducted the test in accordance with the way that he had been trained. The instrument produced a printout, which Defendant signed.

On cross-examination, Deputy Bruso testified that he performed the testing procedures according to the standards and operating procedures promulgated by the Forensic Services Division of the TBI. He said, " Basically the machine tells you everything to do." Deputy Bruso testified that he received instructions on how to operate the "Intoximeter E-C-I-R two" at the Tennessee Law Enforcement Academy and in Montgomery County where he formerly was a deputy sheriff. He also testified that the instruction manual was located with the machine for reference if there were any questions about its operation. Deputy Bruso testified that he was certified to operate the "Intoximeter E-C-I-R two" but he did not have any documentation with him. Concerning his certification, the following exchange took place:

Q:      So when were you specifically certified to operate the E-C-I-R two?

A:      When I went through the Academy in 1996.

Q.:     You were certified with this specific machine?

A.:     It was one of the two; I don't know which two [sic].

Q.:     You don't recall which two [sic]?

A.:     No.

Q.:     Was it possibly the 3000?

A.:     It - - it may have been.

Q.:     Okay.

A.:     Uh, the people in Montgomery County, they, uh, did certify me on the number two one.

Q.:     In Montgomery County?

A.:     Yeah.

Q.:     On the number two; that's the machine that - - that the Dickson Police use?

A.:     Same one.

Q.: Same one. And who certified you on that one?

A.: It was the T-B-I [sic].

Q.: T-B-I [sic]. And do you have that certification with you, sir?

A.: No, I do not.

Q.: Okay. And when did you - - do you know when this happened; this transpired?

A.: Uh, I don't recall that.

Q.: No - - no date?

A.: No.

Deputy Bruso testified that to the best of his knowledge, Defendant did not have any foreign matter in his mouth prior to the breathalyzer test, although he did not look directly into Defendant's mouth to see if he had anything in his mouth. Deputy Bruso testified that he observed Defendant for twenty minutes prior to administering the test, and he knew that Defendant had not consumed any alcohol or smoked while in his custody. He said that Defendant sat in front of him for the entire twenty-minute period chained to a railing. Deputy Bruso testified that he took a mouthpiece out of a drawer in front of the machine. He said that Defendant was "standing there right next to me" when he placed the mouthpiece on the machine. On redirect, Deputy Bruso testified that if he had not followed proper operating procedure, the machine would have aborted itself, and in Defendant's case, the machine did not abort itself.

Defendant testified that Deputy Bruso did not watch him for the entire twenty minutes before administering the test. He claimed that Deputy Bruso was "doing paperwork when I was chained to a railing" and was asking Defendant questions.

## II. Analysis

Defendant contends that the trial court in this case erred by denying his motion to suppress the results of his breath-alcohol test because the State failed to satisfy the six requirements set forth in *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992). In that case, the Tennessee Supreme Court established criteria for the admission into evidence of breath-alcohol tests:

[T]he testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6) identify the printout record offered in evidence as the result of the test given to the person tested.

*Sensing*, 843 S.W.2d at 416.

At trial, the State must establish by a preponderance of the evidence that these six requirements for admissibility were satisfied. *State v. Edison*, 9 S.W.3d 75, 77 (Tenn. 1999). On appeal, a trial court's decision to admit a breath-alcohol test result under *Sensing* will be presumed correct unless the evidence preponderates otherwise. *Id*.

First, Defendant argues that the second and third requirements of *Sensing* were not met because the State failed to show that (1) Deputy Bruso was properly certified in accordance with TBI standards to operate the Intoximeter EC/IR II (2) the machine was tested and certified by the TBI before use, installed pursuant to strict requirements, and retested every ninety days for accuracy, and (3) the machine was working properly when Defendant's Breath test was performed. Deputy Bruso testified that while working as a deputy in Montgomery County, he was certified by the TBI to operate the Intoximeter EC/IR II. He was also certified on another machine when he went through the Law Enforcement Training Academy in 1996. He further testified that he administered the breath-alcohol test in accordance with TBI standards and with his training. Deputy Bruso further testified that "[b]asically the machine tells you everything to do," and he noted that the instruction manual was located with the machine if there were any questions about its operation. He said that the instrument was regularly tested and certified, and the State introduced copies of documents to show that the TBI certified the machine and tested is accuracy on April 9, 2008, and on July 9, 2008. On both occasions, the machine was performing properly. Deputy Bruso testified that if he had not followed proper operating procedure, the machine would have aborted itself. In this case, Deputy Bruso identified the printout produced by the machine with the results of the test conducted on Defendant. The printout contains the following notations: "System Check: Passed" and "Test Status: Success." The evidence in this case is stronger than that offered in *State v. Edison*, 9 S.W.3d 75. In *Edison* the Supreme

-5-

Court determined that the *Sensing* prerequisites were met and that proper procedures were followed. Concerning the third prerequisite, the officer testified that the TBI "calibrated the testing instrument every three months and that a document evidencing the instrument's certification was posted at the jail." The Court held that although the officer "could not specify the exact date of the last maintenance check performed, this lack of specificity does not detract from his testimony." *Edison*, 9 S.W.3d at 78. We also note that Defendant did not provide any evidence that the breath test was inaccurate. Therefore, we conclude that the evidence supports, by a preponderance of the evidence, that the second and third requirements under *Sensing* were met.

Finally, Defendant asserts that the fourth requirement of *Sensing* was not met because the twenty-minute observation period was not satisfied. The twenty-minute observation requirement carries with it two distinct elements. First, the officer must have observed the defendant for twenty-minutes. *State v. Arnold*, 80 S.W.3d 27, 29 (Tenn. Crim. App. 2002). "An officer may not guess, estimate or approximate the amount of time the subject was under observation." Second, "the State must establish that the subject did not smoke, drink, eat, chew gum, vomit, regurgitate, belch or hiccup during the twenty minutes prior to taking the test." *Id*. (citations omitted). The reason for the twenty-minute observation period is to ensure that no foreign matter is present in the defendant's mouth that could retain alcohol and potentially influence the results of the test. *Sensing*, 843 S.W.2d at 416.

In *State v. McCaslin*, 894 S.W.2d 310 (Tenn. Crim. App. 1994), the officer testified that he placed the defendant in the backseat of his patrol car and drove away from the arrest scene at 2:20 a.m. The officer testified that the drive to the police station took approximately ten minutes. The officer administered the breath-alcohol test at 2:46 a.m. *Id*. at 310. Although the defendant was in the officer's presence for the entire twenty-minute period, the officer continuously observed the defendant for only sixteen minutes at the police station prior to administering the breath test. *Id*. at 311. This Court concluded that the officer could not adequately observe the defendant in the patrol car while driving to the police station. *Id*. at 312.

In *State v. Deloit*, 964 S.W.2d 909 (Tenn. Crim. App. 1997), the officer observed the defendant for fifteen minutes while conducting field sobriety tests. The officer then watched defendant in the rearview mirror of the patrol car for an additional ten to thirteen minutes while he completed paperwork in the front seat of the patrol car. The officer admitted that he could not see the defendant while he was writing. *Id.* at 915. This Court held that the officer did not satisfy the twenty-minute observation period because he did not continuously observe the defendant for the requisite twenty minutes. *Id*. at 916.

In *State v. Arnold*, 80 S.W.3d 27 (Tenn. Crim. App. 2002), two officers transported the defendant to the jail. Both officers sat in the front seat of the patrol car, and Defendant sat handcuffed in the backseat of the patrol car. The testing officer testified that he did not continuously observe the defendant during the drive to the jail. One of the officers testified that he took his eyes off the defendant periodically during the drive and while exiting the vehicle, but the defendant did not belch, regurgitate, or place anything in his mouth during the twenty-minutes prior to the breath alcohol test. *Id*. at 28. This Court held that the State failed to establish by a preponderance of the evidence that the officers complied with the fourth *Sensing* requirement. The Court could not conclude that the twenty-minute observation was satisfied because of evidence of distractions such as road noise and noise from the police radio and the fact that the defendant was alone in the backseat of the patrol car. *Id*. at 30-31.

In *State v. Korsakov*, 34 S.W.3d 534 (Tenn. Crim. App. 2000), the officer testified that he observed the defendant from the time they arrived at the jail at 2:45 a.m. until he administered the test at 3:19 a.m. The officer stood across from the defendant and filled out paperwork during that time period. The officer testified that he would have heard or smelled anything that defendant did that could have corrupted the test results. *Id*. at 538. This Court held that although *Sensing* does not require an "unblinking gaze for twenty minutes," "the officer must be watching the defendant rather than performing other tasks." *Id*. at 541.

In *State v. Harold E. Fields*, No. 01C01-9412-CC-00438, 1996 WL 180706 (Tenn. Crim. App. 1996), *no perm. to app. filed*, this Court stated as follows:

> That an officer remained in the room with the defendant for twenty minutes prior to testing will not satisfy the requirements of *Sensing*. *Sensing* requires the State to establish that during those twenty minutes nothing occurred which would compromise the validity of the breath alcohol test. Where an officer can testify that he or she continuously observed the test subject, with his or her eyes, for the entire twenty-minute observational period, the State will in almost all cases be able to meet this requirement of *Sensing*.

In the present case, Deputy Bruso testified that he observed Defendant for twenty minutes prior to administering the breath test. To the best of his knowledge, although he did not look directly into Defendant's mouth, Defendant did not have any foreign matters in his mouth prior to the test. Deputy Bruso specifically testified that Defendant did not smoke, regurgitate, or drink any alcoholic beverage. He knew that Defendant had not consumed any alcohol or smoked while in his custody. Deputy Bruso testified that Defendant was in front of him for the entire twenty-minute period chained to a railing. Although there was testimony that Deputy Bruso took a mouthpiece out of a drawer at some point and placed it

on the machine, Deputy Bruso testified that Defendant was "right next to" him when he performed this task. He also testified that it was the last task that he performed.

As noted above, this Court had held that *Sensing* does not require an "unblinking gaze for twenty minutes." *State v. Korsakov*, 34 S.W.3d at 541. In *State v. Gregory L. Parker*, No. M1999-0209-CCA-R3-CD, 1999 WL 1296018 (Tenn. Crim. App. Dec. 30, 1999) *perm. to appeal denied* (Tenn. Oct. 23, 2000), the evidence demonstrated that the defendant performed a field sobriety test for six minutes prior to a nineteen-minute observation period before the breath test was administered. The officer testified that the defendant did not "belch, regurgitate, smoke, drink, or put anything into his mouth" in the minutes before the observation period began. On cross-examination, the officer conceded that the defendant "could have belched while he had his back turned as he walked to the patrol car, but he saw no indication of that." *Id.* at 1. This Court held that the twenty-minute observation period was satisfied "[b]ecause the officer was in close proximity of the defendant for a six-minute interval preceding the nineteen-minute observation period and there was no indication of regurgitation during the entire time." *Id.* at 2. In *State v. Brad Stephen Luckett*, No. M2000-00528-CCA-R3-CD, 2001 WL 227353 at *4 (Tenn. Crim. App. Mar. 8, 2001), this Court found:

 We find the purpose of the observation period is satisfied where, as here, the officer remains in very close proximity to the defendant for the entire time, engages him or her in conversation (which would assist in determining the presence of foreign matter in the mouth), and loses direct eye contact for only brief intervals of time. In this case, Officer Jones testified that, during the twenty-minute observation period, he was within one and one-half feet of the defendant except for a twenty to thirty second interval when he was no more than four feet away. Officer Jones testified that, during this time, he neither saw nor heard anything to indicate that the defendant had any foreign matter in his mouth. We acknowledge the officer's candid admission that, during the brief time he rolled back in his chair and turned to retrieve some forms, he could not be "100 percent" certain that the defendant did not put anything in his mouth. However, if a suspect so much as coughed or sneezed and simultaneously raised his hand to his mouth, the observing officer would similarly not be able to testify to "100 percent" certainty. In our view, *Sensing* does not require 100 percent certainty. Rather, the State must establish by a preponderance of the evidence that the defendant's mouth was free of foreign matter for a period of twenty minutes prior to his taking the breath-alcohol test. Here, the State succeeded in meeting that burden.

*See also State v. Stanley E. Chatman*, No. M2002-02418-CCA-R3-CD, 2003 WL 22999438 (Tenn. Crim. App. Dec. 23, 2003) *perm. to appeal denied* (Tenn. June 7, 2004)(The fact that the officer may have looked away from the defendant for a second to check his watch does not invalidate the entire observation period).

While a review of the evidence in this case indicates that at some point before administering the breath test, Deputy Bruso entered information into the machine, and reached into a drawer, and took out a mouthpiece, and placed it on the machine, it is unclear when these took place. The computer printout with the results of Defendant's breath test indicates that the observation timer began at 21:02:43, and the test was administered at 21:24:08. As pointed out by the State, Deputy Bruso could have entered Defendant's information into the machine before the observation time began. Further, Deputy Bruso testified that the last thing he did before administering the test was place the mouthpiece on the machine. Deputy Bruso testified that he kept his eyes on Defendant for the entire twenty minutes. Even if he reached in a drawer to remove a mouthpiece and place it on the machine during the observation period, this does not invalidate the entire observation period because Deputy Bruso was in close proximity to Defendant and would have lost eye contact with Defendant for only brief intervals of time. The trial court clearly accredited the testimony of Deputy Bruso that he observed Defendant for the entire twenty-minute period before administering the breath alcohol test, and the evidence does not preponderate against the trial court's finding.

After reviewing the facts of this case, we conclude that the State met its burden, and the trial court properly admitted into evidence the breath-alcohol test. Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE