IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 13, 2016 Session

## STATE OF TENNESSEE v. KELLY NICOLE HENDERSON

**Appeal from the Criminal Court for Davidson County**
**No. 2015-C-1962        Amanda J. McClendon, Judge**

_____

### No. M2016-01325-CCA-R9-CD
_____

We granted this interlocutory appeal to review the trial court's order granting the Defendant's motion to suppress the results of a breath alcohol test. Prior to trial, the Defendant filed a motion to suppress the results of the breath alcohol test based upon a violation of State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). The trial court granted the Defendant's motion to suppress, and the State filed for an interlocutory appeal. After review of the record and applicable authority, we hold that the trial court erred in suppressing the results of the blood alcohol test because the State attempted to properly admit them through expert testimony in accordance with Tennessee Rules of Evidence 702 and 703.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgments of the Criminal
Court Reversed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Matthew Todd Ridley, Assistant Attorney General; Glenn R. Funk, District Attorney General; Samantha Dotson, Assistant District Attorney General, for the appellant, State of Tennessee.

Robert T. Vaughn, Nashville, Tennessee, for the Defendant, Kelly Nicole Henderson.

### OPINION

FACTUAL BACKGROUND

On August 21, 2015, the Davidson County grand jury indicted the Defendant for DUI and DUI per se. The Defendant subsequently filed a motion to suppress the results of the blood alcohol test based upon a violation of requirements set out in Sensing, and a suppression hearing followed.

At the hearing, the arresting officer, Chris Roark, testified that he was employed with the Belle Meade Police Department. He testified that, on September 14, 2014, he observed the Defendant driving fifty-five miles per hour ("mph") in a forty mph speed zone. He stopped the Defendant and noticed that she exhibited signs of physical impairment. Officer Roark asked the Defendant to exit her vehicle. After she complied, he asked her to perform a series of field sobriety tests: "the horizontal gaze nystagmus, the walk and turn[,] and the one-leg stand." After she performed poorly on the field sobriety tests, Officer Roark concluded that the Defendant "was definitely impaired. She showed definite signs of impairment." Officer Roark asked the Defendant if she had had anything to drink, and "[i]nitially, she said no." He asked the Defendant if she would take a breath test at the station, and after "she was read the implied consent advisement[,] . . . she volunteered to take a breath test."

Upon arrival at the station, Officer Roark took the Defendant "into the breathalyzer room." While the Defendant was seated in the room, Officer Roark testified that he "explained[ed] the process" of the breath test and instructed her on how to properly blow into the machine. Prior to beginning the test, Officer Roark claimed that he observed the Defendant for "a little bit longer than twenty minutes" and that during the twenty-minute observation period, he "maintained visual contact" with the Defendant. After the observation period, the Defendant took the test. Officer Roark identified a document containing the test results indicating that the Defendant's blood alcohol content was ".274[,]" and it was entered into evidence.

On cross-examination, Officer Roark admitted that it was possible he left the breathalyzer room during the twenty-minute observation period to "tell [his] sergeant what was going on[.]" Officer Roark insisted that he "never lost visual contact with [the Defendant." He explained that he was likely talking to his sergeant "in the hallway[.]" He averred, however, that he "had one eye on [the Defendant] and one eye [on the hallway], and [he] was watching both[.]" According to Officer Roark, "[he was] talking to [his] sergeant, but [he] had [his] eye on [the Defendant] as well." He confirmed that the dimensions of the breathalyzer room were "approximately ten [feet] by twelve [feet]," and he agreed that he was "probably eleven or twelve feet away from [the Defendant]" while he was "standing at the door."

Officer Roark testified that he was trained and certified by the Tennessee Bureau of Investigation (TBI) to use the breath test machine at the station. He identified the TBI

certificate certifying him to use the "ECIR II" intoximeter machine, and it was admitted into evidence. Officer Roark also testified that this breath test machine was certified by the TBI, and the TBI ran "monthly checks on it." Additionally, the machine would do "its own calibration." Officer Roark identified "certificates of instrument accuracy" regarding the breath test machine, and these documents were entered into evidence. He also agreed that if he had been talking to his sergeant, he would have had "divided attention." Officer Roark explained that the purpose of the twenty-minute observation period was to "make sure [the Defendant] d[i]dn't burp or regurgitate" and acknowledged that "if a person even . . . gently burped[,]" that would "violate the twenty-minute observation[.]" He agreed that it was possible that "there was a period of time that [he] may not have heard a burp when [he] was talking [to his sergeant] at the door[.]" He further explained that if he had left the room, he would have maintained visual contact with the Defendant, but he may not have heard a "light burp" because he was talking to his sergeant.

Furthermore, counsel for the Defendant showed Officer Roark the implied consent form signed by the Defendant regarding the breath test. A section of the document stated, "I did not have any foreign matter in my mouth, did not smoke, regurgitate or drink any alcohol during the twenty-minute observation[.]" Officer Roark admitted that he and the Defendant signed the form prior to beginning the twenty-minute observation. When asked if this was how he was trained to conduct the test, Officer Roark replied, "It was an error on my part." Officer Roark also conceded that he "did not ask her to open her mouth and look inside[.]" However, he stated that he did check to see if there was any foreign matter in her mouth while he was talking to her during the observation period, and he did not see her smoke or consume any alcohol. Officer Roark admitted that he did not ask the Defendant if she had burped.

The Defendant testified for the purpose of establishing that Officer Roark left the breathalyzer room during the twenty-minute observation period. She testified,

> When [they] arrived at the station, [Officer Roark] brought [her] into the small room and he sat down, and he then started doing his paperwork. And after a little bit of conversation, he stood up and went and spoke to somebody in the hallway who had walked by or said something. Then when he came back in the room, he sat a little bit more and then got up and walked out completely, and [she] didn't know if he closed the door . . . . The [she] just sat there and waited for him to come back in and [she thought] he came and sat and [they] had more conversation and he subsequently gave her the test.

Special Agent Robert Miles testified that he worked for the TBI Crime Lab, and the parties stipulated that Agent Miles was qualified to offer expert testimony. Agent Miles stated that he was "responsible for the calibration maintenance of over fifty breath operations in the Middle Tennessee area." Agent Miles explained that the purpose of the twenty-minute observation period was "to ensure that there are no foreign matter in the subject's mouth, the subject doesn't vomit, throw up or introduce some sort of an alcohol into its mouth[.]" He elaborated that alcohol in the mouth would "induce what's called mouth alcohol, which could give a false positive reading."

He explained that in the machine used in this case, the ECIR II, there were built-in safeguards to help get a reliable reading if the subject tested had mouth alcohol:

> [T]he TBI breath testing protocol has three safeguards regarding mouth alcohol. The first is the observation period, the twenty-minute observation is the first safeguard. Studies have shown that twenty minutes is more than enough time to have mouth alcohol reduced to zero or nothing. Second thing is the instrument has a built-in infrared detection device on the instrument. That is to flag mouth alcohol appropriately when necessary. And the third thing, and the most recent thing, is the two test protocol. The two test protocol will flag mouth alcohol if both things fail due to the fact that alcohol dissipates at a very rapid rate. And over a two-minute span, if the first test and the second test ha[ve] a greater difference than .02, then mouth alcohol is the main suspect.

Agent Miles testified that if mouth alcohol were detected by the infrared technology in the machine, the machine "would give a reading that says mouth alcohol."

He identified the "ECIR II admission test" performed on the Defendant, and upon viewing it, explained that there was no indication of mouth alcohol in the results. When asked how he knew there was no mouth alcohol, he stated, "[T]he first and the main . . . thing that [he could] tell [was] that the first test was a .275 and the second test was a .274, which is a thousandth of a decimal point between the two tests." Additionally, there was nowhere on the "breath ticket" that mouth alcohol was detected by the infrared technology in the machine, and he said "under the test status, it says success."

On cross-examination, Agent Miles agreed that all three safeguards were important in getting an accurate result. However, he claimed that "the two test sequence [was] the single most important thing that [the] breath alcohol program ha[d] done as far as ensuring the test." He admitted that he did not know what happened during the observation period in this case, but "this breath test [was] . . . an excellent example of a successful breath test."

-4-

The trial court granted the Defendant's motion to suppress, reasoning that "[w]hile visual observation may be accomplished from the hallway, Officer Roark would not have have been able to capture sound and smell, both of which are important in determining whether subject belches or regurgitates during the testing period." The trial court concluded that the State had "not established by a preponderance of the evidence that the requirements of Sensing ha[d] been met." The State filed for an interlocutory appeal. The trial court granted the State's application, and we granted review.

## ANALYSIS

The State contends that it satisfied the requirements of Sensing, arguing that the officer maintained visual contact with the Defendant during the entire twenty-minute period and ensured that the Defendant did not have anything in her mouth before the test. Furthermore, the State argues that even if the trial court was correct in ruling the Sensing requirements were not satisfied, the State may introduce the results of the breath test through expert testimony. The Defendant contends that the fourth Sensing requirement was not met because Officer Roark stepped out of the observation room to converse with his sergeant during the twenty-minute observation period and, therefore, failed to properly observe her. We conclude that the State failed to satisfy the fourth Sensing requirement, but the State may introduce the results of the breath test through an expert witness.

In Sensing, our supreme court relaxed the requirements for introducing the results of breath-alcohol tests into evidence. 843 S.W.2d 412. The court set forth new requirements that must be followed when the State seeks to admit the results of these tests from a non-qualified expert, such as the testing officer. The court determined that, because the reliability of such testing had become generally accepted, there was no longer a need for a certified operator of a breathalyzer "to know the scientific technology involved in the function of the machine." Id. at 416. Instead, the court held that before evidence of breath-alcohol results are introduced, the testing officer must be able to testify:

> (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5)

-5-

evidence that he followed the prescribed operational procedure, [and] (6) identify the printout record offered in evidence as the result of the test given to the person tested.

Id.

Because Sensing lowered the standard for admissibility of breath-alcohol tests, our supreme court has declined to further relax the now well-established foundational requirements for admitting such evidence. See State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995) (explaining that Sensing created "unambiguous threshold admissibility requirements" for the introduction of breath alcohol testing results from a non-expert); see also State v. Deloit, 964 S.W.2d 909, 914 (Tenn. Crim. App. 1997) (noting that Bobo held that "once the state decides to proceed under Sensing, which relaxed traditional requirements of admissibility, there can be no further relaxation of the rules"). The State carries the burden of proving that the breath test complied with the Sensing requirements. State v. McCaslin, 894 S.W.2d 310, 312 (Tenn. Crim. App. 1994). On appeal, there is a presumption that the trial court's determination of the Sensing requirements is correct unless the evidence preponderates otherwise. State v. Edison, 9 S.W.3d 75, 78 (Tenn. 1999).

The fourth Sensing requirement requires the State to prove two distinct elements: (1) that the defendant was observed for twenty minutes *and* (2) that the defendant "did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate[.]" 843 S.W.2d at 416. This court has previously held that while "an unblinking gaze for twenty minutes is not required, . . . the officer must be watching the defendant rather than performing other tasks." State v. Korsakov, 34 S.W.3d 534, 540 (Tenn. Crim. App. 2000). In Korsakov, the officer administering the breath-alcohol test filled out paperwork during the observation period. Id. at 539. The officer testified that, while standing across a counter from the defendant, he was able to observe the defendant through his peripheral vision, and he "affirmed that the defendant did not eat, drink, smoke, vomit, or belch during this time." Id. The court determined that although the officer was confident that he would have heard or smelled any of the activities that might have affected the results of the breath test, this "belief" did not satisfy the prerequisite that the defendant be observed for twenty minutes. Id. at 541. Also, in Deloit, this court held that the results of a breath-alcohol test were not admissible where the officer observed the defendant in his rear view mirror while he filled out paperwork. 964 S.W.2d at 916.

Likewise, in State v. Sean E. Miller, because the officer admitted that he was completing paperwork and talking to other officers during the observation period, the court held that he could not conclusively verify that the defendant did not burp, belch, regurgitate, or put anything in his mouth. No. W2001-02045-CCA-R3-CD, 2002 WL

1483197, at \*1 (Tenn. Crim. App. Feb. 15, 2002). The court stated that although there was a videotape of the defendant while he was in the backseat of the patrol car, his face was not observable for the entire twenty-minute period. Id. at \*3 n.1. Therefore, although "an appellate court's standard of review is de novo with no presumption of correctness where evidence does not involve issues of credibility," the court could not make an independent determination that the fourth Sensing requirement had been met. Id. (citing State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000)). Furthermore, burping, belching, and regurgitating can occur in a matter of seconds, and "while 'often a belch or regurgitation will produce a noise capable of being heard by another person, this is not always the case.'" Korsakov, 34 S.W.3d at 541 (quoting State v. Harold E. Fields, No. 01C01-9412-CC-00438, 1996 WL 180706, at \*3 (Tenn. Crim. App. Apr. 12, 1996)).

In denying the motion to suppress, the trial court noted that

> Officer Roark would have been twelve feet away from [the Defendant] while he was speaking to his sergeant. He claims to have kept an eye on [the Defendant] during the entire twenty-minute period, even when he was conversing with another individual in the hallway. At the hearing on the Motion to Suppress, Officer Roark stated that he maintained audio observation of [the Defendant] "as much as he physically could," but admitted that his attention would have been divided if he was having a conversation with his sergeant.

> This court holds that 'observation' means using the senses of sight, sound, and smell to observe the test subject. While Officer Roark was speaking [to] his sergeant in the hallway, he could not use all his senses to observe [the Defendant]. In this case, Officer Roark's observation was interrupted by a conversation with someone outside the observation/testing room. While Officer Roark may have kept an eye on [the Defendant], he could not detect sound or smell from the hallway.

> Further, [the Defendant] completed the portion of the paperwork that stated she had not belched or regurgitated before the twenty-minute observation period. After the observation period, Officer Roark did not ask Ms. Henderson to confirm that she had not belched or regurgitated.

We agree with the trial court that the State failed to meet the fourth requirement of Sensing; however, that is not the end of our analysis. In Deloit, this court concluded that the State may proceed under Sensing or the Tennessee Rules of Evidence, specifically Rules 702 and 703, to establish the admissibility of evidentiary breath test results. 964 S.W.2d at 913-14. This court stated,

-7-

Our view is that if the state complies with the requirements of Sensing, it is entitled to the presumption that the test results are reliable and the results may be admitted into evidence without the benefit of an expert. If not, the state may still use traditional rules of evidence to lay the foundation for admitting the evidence but there is no presumption of reliability.

Id. at 913 (citing Tenn. R. Evid. 702, 703).

Tennessee Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tennessee Rule of Evidence 703 provides that

the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or make known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In the present case, the State attempted to introduce the results of the breath alcohol test through expert testimony. Both parties stipulated that Agent Miles was qualified to offer expert testimony regarding the Defendant's breath alcohol test. Agent Miles explained that there were safeguards in addition to the twenty-minute observation period to ensure that the breath alcohol test was not skewed by mouth alcohol. Additionally, he testified that "this breath test [was] . . . an excellent example of a successful breath test." Therefore, we conclude that the trial court erred in suppressing the results of the breath alcohol test because the State may properly introduce the results through the expert testimony of Agent Miles.

## CONCLUSION

Based upon consideration of the foregoing and the record as a whole, we reverse the judgment of the trial court.

_____

D. KELLY THOMAS, JR., JUDGE