# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 5, 2014 Session

## STATE OF TENNESSEE v. SHANA SCHAFER

**Direct Appeal from the Criminal Court for Shelby County**
No. 13-00261      Carolyn Wade Blackett, Judge

---

**No. W2013-02031-CCA-R9-CD  - Filed May 5, 2014**

---

A Shelby County grand jury indicted the Defendant, Shana Schafer, for driving while under the influence of an intoxicant ("DUI") and DUI with a blood alcohol content ("BAC") of greater than .08 percent.  The Defendant filed a motion to suppress the results of the blood alcohol test based upon a violation of *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992).  The trial court granted the Defendant's motion to suppress, and the State filed for an interlocutory appeal.  The trial court granted the State's application, and, on appeal, the State contends that the trial court erred when it granted the Defendant's motion to suppress.  After a thorough review of the record and applicable authorities, we conclude that the trial court did not abuse its discretion when it granted the Defendant's motion to suppress.  As such, we affirm the trial court's judgment.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; Stephanie Johnson, Assistant District Attorney General, for the appellant, State of Tennessee.

Clairborne H. Ferguson (at hearing and on appeal), and Andrew Plunk (at hearing), Memphis Tennessee, for the appellee, Shana Schafer.

## OPINION

### I. Facts

This case arises from a traffic stop of the Defendant's vehicle that occurred on August

5, 2012. In relation to this stop, a Shelby County grand jury indicted the Defendant for DUI and DUI with a BAC of more than .08 percent. Before trial, the Defendant filed a motion to suppress the results of the blood alcohol test. At a hearing on this motion, the following evidence was presented: Kyl Sathongnhoth, an officer with the Germantown Police Department, testified that he arrested the Defendant on August 5, 2012. He explained the events leading to the Defendant's arrest, stating that his supervisors called him and reported that there was a young lady in a vehicle who was crying "hysterically." His supervisors reported that they had detected an odor of an intoxicant, and they called Officer Sathongnhoth to the scene to conduct a "DUI test."

When Officer Sathongnhoth arrived at the scene at around midnight, he saw the Defendant inside her car parked in the parking lot of an Exxon gas station. He first talked to his supervisors, and then he approached the Defendant, who was still seated inside her car. Officer Sathongnhoth recalled that the Defendant was sitting in the driver's seat, crying. The officer said the Defendant was "crying pretty hysterically," and he asked her for her identification. He noted that her wallet was empty, and the contents of her wallet were scattered on the floor of her car. Officer Sathongnhoth said he attempted calm the Defendant while the Defendant and the officer worked together to locate her identification. The officer noted the odor of intoxicant coming from the Defendant's breath.

Officer Sathongnhoth said that he asked the Defendant to submit to three field sobriety tasks: the horizontal gaze nystagmus, the walk and turn, and the one-leg stand. The officer said that it took some time to calm the Defendant before she could focus on his instructions. During the instructional phase of the walk and turn test, the Defendant exhibited difficulty balancing. When she started the walking phase, she used her arms, did not touch her heel to toe, and, instead, walked casually. Officer Sathongnhoth said that the Defendant's not following his instructions in multiple instances were indicators of intoxication. About the one-leg stand test, the officer testified that the Defendant was swaying "quite a bit" while she attempted to balance and that she had a hard time balancing. These were also indicators of her intoxication.

After the officer completed administering the field sobriety tests, he was of the opinion that the Defendant was intoxicated and should not be operating a motor vehicle. Officer Sathongnhoth placed the Defendant in his patrol car, and he read her the advice of rights and the Tennessee Complied Consent Law. He then asked her to submit to a blood alcohol test, and the Defendant consented.

Officer Sathongnhoth testified that there were certain procedures he was required to follow before the blood alcohol test could be administered. He said that one of the requirements was that before administering the test he first observe the Defendant for twenty

2

minutes for factors that might effect the test results. He said that the testing machine was programmed for twenty-one minutes. After the twenty-one minute observation period, the Defendant was allowed to blow into the Intoxymeter. Officer Sathongnhoth testified that he observed the Defendant for the twenty-minute observation period. He denied that he was doing paperwork during this time frame.

Officer Sathongnhoth testified that, generally, during the observation period, he was confined to the seat of his vehicle with the Defendant located in the backseat of his vehicle. He, however, spent most of the time talking to the suspect and observing the suspect before the suspect blew into the Intoxymeter. He said he would try to turn around and look at the suspect in the face, and he also had an LED screen in front of him displaying the picture from a camera that was pointed directly at the suspect in the backseat.

Officer Sathongnhoth said that during the period he observed the Defendant in the backseat of his vehicle, he did not see her eat or drink anything, nor did he see her put anything in her mouth, smoke, or regurgitate. All of the Defendant's actions were recorded through the DVD recorder in Officer Sathongnhoth's car, and the DVD recording was admitted into evidence. Officer Sathongnhoth said that, at the conclusion of the observation period, the Defendant signed a form acknowledging that she had not placed anything in her mouth during the observation period and that she would take the test.[1]

Officer Sathongnhoth testified that at one point during the observation period, he observed the Defendant wipe her nose. He said that he did not see her put anything in her mouth at that point in time. He said that a "rustling" noise could be heard on the DVD recording. He explained that he had his keyboard on his lap, and his microphone was located on his hip; therefore, when he moved around, it made a sound. Officer Sathongnhoth testified that during the duration of the twenty-one minute observation period, he was able to observe the Defendant either eye-to-eye or on the police monitor.

During cross-examination, Officer Sathongnhoth identified the sound of his gun-belt and the seat creaking. He then acknowledged that the sound of paper rustling could be heard at several points during the observation period. The officer acknowledged that the video showed him reaching his arm over to the passenger seat. He denied that he moved the keyboard to the passenger seat so that he could work on paperwork. He agreed that the video showed him moving the keyboard. He could not recall, however, whether he was reaching to get his keyboard or whether he was placing the keyboard in the passenger seat. He said that there were times that he moved the keyboard so that he could more freely move in the driver's seat of the vehicle, as opposed to keeping it on his lap for the duration of the

_____

[1]This form was introduced into evidence but is not included in the record on appeal.

observation period.

Officer Sathongnhoth identified another time that he could be seen in the "reflection" moving. He said he did not recall specifically what he was doing. He offered, however, that it was getting close to the end of the observation period and that he may have been preparing to turn around and give the Defendant further instructions. He said he was moving his clipboard, which was in his lap. The officer explained that he had to fill out all of his paperwork and the arrest tickets before the observation period so that he would have the necessary information to input into the Intoxymeter machine.

Officer Sathongnhoth testified that he watched his screen to observe the Defendant while he provided her instructions. The officer denied that the rustling of papers was him filling out paperwork. He said he did not complete any paperwork during the observation period.

During redirect examination, Officer Sathongnhoth maintained that while he was moving in the seat and moving various items around, he was still observing the Defendant.

Based upon this evidence, the trial court granted the Defendant's motion to suppress. In its order, the trial court found:

> On the evening of August 5, 2012, police officers were called out [to] the parking lot of an Exxon Gas Station for a welfare check. . . . The observing officers noticed the Defendant had the smell of intoxicants on her. . . . Officer Sathongnhoth, an officer with the Metro DUI [unit] was called out to the scene to observe [the] Defendant. . . . [The] Defendant was in the front seat of her vehicle crying. . . . Officer Sathongnhoth spoke with the supervisors, then with [the] Defendant, and then confirmed the smell of intoxicants on her. . . .

> At this point, Officer Sathongnhoth moved [the] [D]efendant to the north end of the parking lot to use it as a safe place for field sobriety tests. . . . The officer then performed the standard field sobriety test consisting of the horizontal gaze nystagmus, the walk and turn, and the one leg stand. . . . These tests were shown in the video marked Exhibit 2.

> Following the tests and on the same video, Officer Sathongnhoth placed [the] Defendant in the back of his patrol car. . . . At this point, Officer Sathongnhoth advised [the] Defendant of her rights, read [the] Defendant the

4

Tennessee Implied Consent Law, and asked [the] Defendant to submit to a Blood Alcohol Concentration ("B.A.C.") test. . . . To administer this test, the machine requires the Officer to wait twenty minutes before allowing [the] [D]efendant to breath[e] into the machine. . . . This is required to allow the Officer time to observe the Defendant prior to allowing her to complete the B.A.C. test. . . . During this twenty minutes, the camera in the patrol car was aimed squarely at [the] Defendant, returning video to an LED screen in front of Officer Sathongnhoth. . . . In the video during the twenty minute observation period, Officer Sathongnhoth can be heard, on a few occasions, shuffling items back and forth within his lap. . . . Officer Sathongnhoth further testified that he was shifting the items to and from his lap while attempting to observe [the] Defendant both on the LED screen and with his own vision. . . .

Based upon these findings of fact, the trial court concluded that Officer Sathongnhoth had not "continuously" observed the Defendant as required by *State v. Sensing*, 843 S.W.3d 412, 416 (Tenn. 1992). The trial court stated:

In the case before the court, Officer Sathongnhoth admitted to shifting things in his lap on multiple occasions during the observational period. . . . The officer admitted his gaze was shifting from the video screen to the [D]efendant during this time. . . . By shifting his gaze on multiple occasions, and turning his attention from the [D]efendant without maintaining eye contact with the [D]efendant, the Officer diminishes certainty that he adequately and accurately observed her continuously during the observational period as elaborated on in numerous cases. This, however, would not be entirely dispositive, considering examples provided in our courts of how video evidence may be used to supplement the officer's continual gaze during the observational period, and that the state *may* be able to establish its burden using such evidence. *Fields*, 1996 WL 1180706, at *3. As mentioned in that example, in such case, an officer would need to establish that he or she was able to observe things that may be missed within the video evidence such as a silent form of burping or regurgitation. *Id.* These forms of bodily function often occur silently, and may not be easily recorded, but may be picked up by the senses of the officer including sight, hearing, and smell, given close proximity to the test subject. *Korsakov*, 34 S.W.3d at 541.

While the video evidence brought before this court does not definitely show that any of these things occurred, it cannot wholly supplant the officer's continuous, eye-to-eye observation. The officer must "be able to testify with

5

certainty that the defendant did not silently or surreptitiously chew gum, belch, or regurgitate." *Fileds*, 1996 WL 180706, at *3. In this case, Officer Sathongnhoth testified summarily that, though he moved objects about in the car and moved his eyes from the [D]efendant to the screen throughout the observational period, the [D]efendant did not smoke, put anything in her mouth or regurgitate. . . . Officer Sathongnhoth at no point testified to the possibility of the [D]efendant burping or burping/regurgitating silently at any point during the hearing. . . .

It should be noted that the burden is not on the Defendant to show any of these things happened, but "it is the State's burden, not the defendant's, to present evidence through the testing officer that the *Sensing* pre-test requirements were met." *McCaslin*, 894 S.W.2d at 312. Because the evidence has shown that the Officer was likely performing other tasks or was otherwise distracted, it is possible that the Officer missed the very functions that he was charged with observing. The State, in this case, has not proved by a preponderance of the evidence that the observation was adequately performed as to prevent a silent or surreptitious bodily function to have occurred outside of the range of the camera's perception. As such, the results of the B.A.C. test cannot be admissible. *Sensing*, 843 S.W.2d at 416; *Fields*, 1996 180706, at *3.

It is from this judgment that the State now appeals.

## II. Analysis

On appeal, the State contends that the trial court erred when it granted the Defendant's motion to suppress. The State asserts that the record does not support the trial court's factual findings and that the trial court's legal findings are inconsistent with *Sensing* and its progeny. The Defendant contends that the trial court did not err because the State did not prove that Officer Sathongnhoth adequately observed the Defendant for twenty minutes before giving her a BAC test. We agree with the Defendant.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; see also Tenn. R. App. P. 13(d). The application of the law to the facts, however, is reviewed de novo on appeal. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). We review the issue in the present

appeal with these standards in mind.

In *Sensing*, our Supreme Court established six elements that the State must prove before the results of a breath-alcohol test may be admitted:

> (1) the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that [the officer] was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke or regurgitate, (5) evidence that [the officer] followed the prescribed operational procedures, [and] (6) [the officer must] identify the printout record offered in evidence as the result of the test given to the person tested.

843 S.W.2d at 415. The State must establish compliance with these elements by a mere preponderance of the evidence. *State v. Arnold*, 80 S.W.3d 27, 29 (Tenn. Crim. App. 2002). This Court will "presume that the trial court's *Sensing* decision is correct unless the preponderance of the evidence is to the contrary." *Id.*

At issue in the case presently before us is the fourth *Sensing* requirement, which requires that the police officer be able to testify that the motorist was observed for the requisite twenty minutes prior to the test, and during this period, did not have foreign matter in his or her mouth, did not consume any alcoholic beverage, smoke, or regurgitate. The purpose of the fourth *Sensing* requirement is to ensure "that no foreign matter is present in the defendant's mouth that could retain alcohol and potentially influence the results of the test." *State v. Cook*, 9 S.W.3d 98, 101 (Tenn. 1999). This requirement has two distinct elements: first, "the State must demonstrate that the Defendant was observed for twenty minutes," and second, "the State must establish that the subject did not smoke, drink, eat, chew gum, vomit, regurgitate, belch or hiccup during the twenty minutes prior to taking the test." *Arnold*, 80 S.W.3d at 29 (quoting *State v. John H. Hackney*, No. 01C01-9704-CC-00152, 1998 WL 85287, at *2 (Tenn. Crim. App., at Nashville, Feb. 20, 1998), *perm. app. denied* (Tenn. Nov. 9, 1998)). If the State presents "credible proof establish[ing] that the subject did not have foreign matter in the mouth, did not consume any alcoholic beverage, and did not smoke or regurgitate, then the rule is satisfied . . . ." *State v. Hunter*, 941 S.W.2d 56, 57-58 (Tenn. 1997).

7

As this Court has stated previously, "*Sensing* does not require 100 percent certainty[;]" however, "the State must establish by a preponderance of the evidence that the defendant's mouth was free of foreign matter for a period of twenty minutes prior to his taking the breath-alcohol test." *State v. Brad Stephen Luckett*, No. M2000-00528-CCA-R3-CD, 2001 WL 227353, at *4 (Tenn. Crim. App., at Nashville, March 8, 2001), *no Tenn. R. App. P. 11 application filed*.

In *Cook*, our Supreme Court held that the fact that a defendant was wearing dentures at the time of his breath-alcohol test did not preclude the admission of the test results. *Cook*, 9 S.W.3d at 101. The Court found that where the defendant was observed for the requisite period of time and nothing unusual was detected, the defendant was asked if he had any foreign matter in his mouth and replied that he did not, and the intoximeter would have shut down had it detected the presence of mouth alcohol, the evidence did not "preponderate against the trial court's decision to admit the results of the breath-alcohol test . . . ." *Id*.

Similarly, in *State v. Luckett*, this Court has held that the State satisfied the fourth *Sensing* requirement even though the officer did not ask the defendant if he had any foreign matter in his mouth prior to administering the test and did not confirm there was no foreign matter by visually inspecting the defendant's mouth. *Luckett*, 2001 WL 227353 at *1-2, 4. This Court upheld the admission of the breath-alcohol test results because the administering officer did not observe anything unusual during the twenty minute observation period and because the officer did not notice anything during his conversation with the defendant that would have caused him to believe the defendant had any foreign matter in his mouth. *Id*. at *2, 4.

In *State v. McCaslin*, 894 S.W.2d 310 (Tenn. Crim. App. 1994), the officer testified that he placed the defendant in the backseat of his patrol car and drove away from the arrest scene at 2:20 a.m. *Id*. at 311. The officer testified that the drive to the police station took approximately ten minutes. *Id*. The officer administered the breath-alcohol test at 2:46 a.m. *Id*. at 311. Although the defendant was in the officer's presence for the entire twenty-minute period, the officer continuously observed the defendant for only sixteen minutes at the police station prior to administering the breath test. *Id*. This Court concluded that the officer could not adequately observe the defendant in the patrol car while driving to the police station. *Id*. at 312.

In *State v. Deloit*, 964 S.W.2d 909 (Tenn. Crim. App. 1997), the officer observed the defendant for fifteen minutes while conducting field sobriety tests. *Id*. at 915. The officer then watched defendant in the rearview mirror of the patrol car for an additional ten to thirteen minutes while he completed paperwork in the front seat of the patrol car. *Id*. The officer admitted that he could not see the defendant while he was writing. *Id*. This Court

8

held that the officer did not satisfy the twenty-minute observation period because he did not continuously observe the defendant for the requisite twenty minutes. *Id.* at 916.

In *State v. Arnold*, 80 S.W.3d 27 (Tenn. Crim. App. 2002), two officers transported the defendant to the jail. Both officers sat in the front seat of the patrol car, and Defendant sat handcuffed in the backseat of the patrol car. *Id.* The testing officer testified that he did not continuously observe the defendant during the drive to the jail. *Id.* One of the officers testified that he took his eyes off the defendant periodically during the drive and while exiting the vehicle, but the defendant did not belch, regurgitate, or place anything in his mouth during the twenty-minutes prior to the breath alcohol test. *Id*. at 28. This Court held that the State failed to establish by a preponderance of the evidence that the officers complied with the fourth *Sensing* requirement. The Court could not conclude that the twenty-minute observation was satisfied because of evidence of distractions such as road noise and noise from the police radio and the fact that the defendant was alone in the backseat of the patrol car. *Id*. at 30-31.

In *State v. Korsakov*, 34 S.W.3d 534 (Tenn. Crim. App. 2000), the officer testified that he observed the defendant from the time they arrived at the jail at 2:45 a.m. until he administered the test at 3:19 a.m. *Id*. at 537. The officer stood across from the defendant and filled out paperwork during that time period. *Id.* The officer testified that he would have heard or smelled anything that the defendant did that could have corrupted the test results. *Id.* This Court held that although *Sensing* does not require an "unblinking gaze for twenty minutes," "the officer must be watching the defendant rather than performing other tasks." *Id.* at 540.

In *State v. Harold E. Fields*, No. 01C01-9412-CC-00438, 1996 WL 180706 (Tenn. Crim. App., at Nashville, 1996), *no perm. to app. filed*, this Court stated as follows:

> That an officer remained in the room with the defendant for twenty minutes prior to testing will not satisfy the requirements of *Sensing*. *Sensing* requires the State to establish that during those twenty minutes nothing occurred which would compromise the validity of the breath alcohol test. Where an officer can testify that he or she continuously observed the test subject, with his or her eyes, for the entire twenty-minute observational period, the State will in almost all cases be able to meet this requirement of *Sensing*.

The fact that "the officer may have looked away from the defendant for a second to check his watch does not invalidate the entire observation period." *State v. Stanley E. Chatman*, No. M2002-02418-CCA-R3-CD, 2003 WL 22999438 (Tenn. Crim. App., at Nashville, Dec. 23, 2002), *perm. app. denied* (Tenn. June 7, 2004).

9

We first note that the State did not submit a copy of the videotape evidence in the record on appeal. It is the duty of the appellant to prepare an adequate record for appellate review. Tenn. R. App. P. 24(b). "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). Without the videotape, we have no ability to review the trial court's findings with regard to the rustling or shuffling of the papers during the observation period.

In light of this and in light of our standard of review, which makes the trial court's factual findings on a motion to suppress conclusive on appeal unless the evidence preponderates against them, we conclude that the trial court did not abuse its discretion when it granted the Defendant's motion to suppress. We presume, in the absence of any videotape, that the officer could be heard shuffling papers during the twenty-minute observation period. That fact, in combination with the officer's testimony that he shifted things in his lap on multiple occasions and his testimony that he shifted his gaze between the video screen and the Defendant during the observational period, supports the trial court's finding that "the Officer was likely performing other tasks or was otherwise distracted, it is possible that the Officer missed the very functions that he was charged with observing."

We also find conclusive, because the evidence does not preponderate against it, the trial court's finding the State had not proved by a preponderance of the evidence that the observation was adequately performed as to prevent a silent or surreptitious bodily function to have occurred outside of the range of the camera's perception. Because the evidence does not preponderate against the trial court's findings, we conclude that the trial court did not abuse its discretion when it granted the Defendant's motion to suppress. As such, the trial court's judgment is affirmed.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

10